FILED
 2015 Aug-26  AM 10:57
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **JERRI ALANA MORRIS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 4:14-CV-1206-KOB |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. Introduction

On April 5, 2011, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits.  The claimant also filed a Title XVI application for supplemental security income on April 5, 2011. (R. 82-83, 137-49).  The claimant alleged disability beginning August 15, 2010, because of to a heart condition (valve problems); chronic kidney stones; surgeries on both legs/knees; depression; attention deficit hyperactivity disorder (ADHD); and back pain.  (R. 171).

The agency initially denied the claimant's applications on August 3, 2011.  (R. 82-83). The claimant filed a timely request for a hearing before an Administrative Law Judge to challenge the Commissioner's decision, and the ALJ held a video hearing on March 6, 2013.  (R. 33).  In a decision dated March 27, 2013, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and was, therefore, ineligible for social security benefits. (R 11-32).  Subsequently, the Appeals Council denied the claimant's request for review.  (R. 1-3, 8).

The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court AFFIRMS the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review: 1) whether the ALJ improperly weighed the testimony of Dr. Kathleen Duryea, claimant's treating physician; 2) whether the ALJ applied proper weight to the opinion of Dr. June Nichols, the consultative psychologist for the Commissioner; and 3) whether the ALJ had a duty to re-contact Dr. Nichols.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if she applied the correct legal standards and if substantial evidence supports the factual conclusions. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker,* 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo.* The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational

factors "are not medical opinions...but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Whether the claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker,* 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of the evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. §423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...". 42 U.S.C. §423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?

>   (2) Is the person's impairment severe?
>   (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subtpt. P, app. 1?
>   (4) Is the person unable to perform his or her former occupation?
>   (5) Is the person unable to perform any other work within the economy?
>
>   An affirmative answer to any of the above questions leads either to the next question or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

Absent a showing of good cause to the contrary, the ALJ must accord substantial or considerable weight to the opinions of treating physicians. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The ALJ must credit the opinions of treating physicians over those of consulting physicians unless good cause exists for treating the opinions differently. *Lewis v. Callahan*, 125 F.3d 1436, 1440-41 (11th Cir. 1997). The ALJ may discount a treating physician's report when the report is not accompanied by objective medical evidence or is wholly conclusory. *Crawford,* 363 F.3d at 1159. An ALJ may also discount the opinion of a treating physician when the physician's opinion is "not bolstered by the evidence." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (2004). If the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight and substantial evidence supports those reasons, the ALJ does not commit reversible error. *Moore,* 405 F.3d at 1212.

The ALJ may reject the opinion of *any* physician when the evidence supports a contrary conclusion. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (emphasis added). The ALJ must consider all medical opinions, but does not have to accord an opinion arising out of a single consultative examination the special deference he must give to a treating physician's opinion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).

Additionally, the ALJ has a duty to fully and fairly develop the record. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990). Under the current law, the ALJ is not obligated to re-contact physicians if he finds the evidence to be inadequate. This action is now discretionary. *See* 20 C.F.R. § 404.1520b(c)(1) (stating that the ALJ "*may* [not must] re-contact your treating physician, psychologist, or other medical source" to resolve inconsistencies or insufficiencies in the record) (emphasis added).

### V. FACTS

The claimant was thirty-eight years old at the time of the ALJ's decision. (R. 27, 82). She completed two years of college, and has past experience working as a cashier, medical assistant, receptionist, and a nurse's aid. (R. 40, 56, 172). The claimant alleged disability beginning on August 15, 2010 (R. 137). The claimant originally alleged that she was unable to work because of a heart condition, chronic kidney stones, multiple bilateral leg surgeries, attention deficient disorder, depression, and back pain. (R. 171).

The claimant also alleges she has severe physical problems in both knees, severe low back pain because of disc bulge (R. 267-291), severe neck pain, severe left knee pain caused by osteoarthritis, severe right knee pain because of degenerative changes (R. 387-415), left leg pain (R. 295-296), left shoulder pain, diabetes, insomnia, hypertension, tachycardia, recurrent kidney stones, ADD, polycystic ovarian syndrome, post-traumatic stress disorder, and syncope (fainting).  (R. 541-563).

*Physical Limitation*s

The claimant alleges she has numerous problems with her legs.  The record reflects that the claimant has undergone multiple surgeries on both legs.  The claimant had a rod placed in her

right femur in 1995 after it was fractured in an automobile accident. (R. 267-291). The rod was removed in 1997 when she complained of pain and swelling. (R. 267-291). She then had a four-wheeling accident and had to have a rod placed in her left tibia, which also had to be removed, because it was coming out through her knee. The claimant returned to work as a medical assistant and came out of work in August 2010 after left knee surgery. (R. 435-445, 464-540).

In March of 2010, the claimant received relief from her right knee pain for two weeks following hyaluronic acid injections. When the claimant saw her primary physician, Dr. Duryea, in May of 2010, she reported doing better after Dr. Duryea increased her dose of Bystolic. Dr. Bushnell noted in October of 2010 that claimant had no complaints and was walking around, even after she remained non-compliant with weight-bearing restrictions. While she had some tenderness and mild effusion, the claimant had no swelling, a good strength challenge, and no ligamentous instability. Dr. Bushnell stated that claimant also reported she had no real night pain. (R. 464-540).

On June 14, 2011, Alvin Tenchavez, M.D., performed a consultative medical examination of the claimant at the request of the state agency. His examination of the claimant showed normal deep tendon reflexes, normal grip strength, no sensory deficits, and negative straight leg raises. The claimant had no pain, restriction, or swelling on review of any other joints. She was able to heel, toe, and tandem walk, and stoop and rise on her knees. She ambulated without any assistive device. (R. 569-574).

The claimant stayed in the hospital overnight on August 18, 2011 following complaints of chest pain and shortness of breath. After undergoing several diagnostic tests, such as vitals, a chest x-ray, and physical examination, Melissa Kehl, M.D. discharged the claimant with

diagnoses of chest pain, tobacco abuse, obesity, and osteoarthritis. (R. 607-626).

The claimant saw Dr. Duryea at the Centre Floyd Primary Care on October 27, 2011 for a bout of cellulitis. During the examination, the claimant's cardiac and respiratory examinations were normal. The claimant returned to the Centre Floyd Primary Care on February 3, 2012, stating she needed to "follow up on my mood and my heart, and I also think I have some fluid in my ear, and I need a disability paper." The claimant reported to Dr. Duryea that she was not taking her medications as prescribed. She also reported that she could walk only five minutes straight, sit 40 minutes, stand 10 minutes, and that she could not use a ladder, could barely walk up stairs, and was unable to lift anything over five pounds. In spite of her report, the claimant's physical examination showed normal movement of all her extremities and a normal gait and stance. Other than a notation that the claimant was obese, her physical examination was normal. Dr. Duryea also noted that the claimant was alert and oriented to time, place, and person. (R. 640-46).

*Mental Limitations*

No medical evidence exists in the record since treatment for rhinitis in July of 2012. However, the claimant's medical records do show that Dr. Duryea prescribed medications for many years for depression and anxiety. Dr. Duryea diagnosed the claimant with post-traumatic stress disorder (PTSD) from a previous abusive relationship. Her primary physician, Dr. Duryea, treated her for those problems. (R. 46). The claimant takes Praxil on a daily basis. (R. 54).

On July 5, 2011, June Nichols, Psy.D, performed a consultative psychological evaluation of the claimant at the request of the state agency. While no records show that the claimant received mental health treatment, the claimant told Dr. Nichols that she fought with depression

daily and that she experienced overwhelming anxiety.  She also reported problems with her memory, focus, and nightmares.  While the claimant's mood was depressed, her affect was unremarkable and within normal limits and she did not show any signs of anxiety.  She was oriented to person, place, time, and situation, and her stream of consciousness was clear. (R. 575-579).

Dr. Nichols diagnosed claimant with post-traumatic stress disorder (PTSD), major depressive disorder, recurrent, moderate anxiety disorder without agoraphobia, ADHD, distractible type, and alcohol abuse in remission for two years.  She assigned the claimant a Global Assessment of Function (GAF) score of 50 - representing an individual with moderate difficulty in social, occupational, or school functioning.  Dr. Nichols also noted that the claimant does not need assistance to handle her own funds or live independently. (R. 575-579).

On April 6, 2012, Dr. Kathleen Duryea, the claimant's treating physician, completed a medical source statement (MSS) regarding the claimant's mental and physical limitations and pain at the request of the State agency.  (R. 641-46).  Dr. Duryea opined that the claimant had marked limitations in maintaining concentration and attention for extended periods, performing activities within a schedule, maintaining a regular attendance, and being punctual.  (R. 642).  She also opined that the claimant had moderate difficulties in understanding, remembering, and carrying out complex instructions and repetitive tasks, and sustaining a routine without special supervision, among other mental limitations.  (R. 642-43).  With respect to the physical limitations, Dr. Duryea noted that the claimant could lift up to 25 pounds occasionally; sit, stand, and walk for a total of three hours each in an eight-hour day; could never use her feet for pushing or pulling; and could never squat, crawl, or climb.  (R. 645).  Dr. Duryea also indicated that the

claimant had chronic and continuous pain and that her condition would result in three or more days of absence from work per month. (R. 646).

### *The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ on March 6, 2013. (R. 35).

The claimant testified that she can not sit very long, due to numbness and swelling in her legs. (R. 37). The claimant further testified that she can walk pretty well, but sitting triggers her pain. (R. 37-38). The claimant also stated that she must prop her feet up three to fours hours a day. (R. 39). She stated that, while she takes Aleve or ibuprofen, her typical pain level during the day is usually about a seven or an eight on a one-to-ten pain scale. (R. 43-44). The claimant stated she can complete household chores, if given time. She further stated she has a hard time sleeping at night because of her inability to get comfortable. She stated she may only sleep four hours a night. (R. 44).

The claimant testified that she last worked as a medical assistant at the primary care center at Floyd Medical Center. After her last surgery, she was unable to keep up with the pace of the office, so Floyd Medical Center let her go. (R. 40). The claimant's primary responsibilities as a medical assistant included taking vital signs, drawing blood, and giving injections. (R. 42).

The claimant testified that she can stand about ten minutes at a time. (R. 44). She furthered explained that she can sit between ten and thirty minutes at a time, depending on the comfort of the chair. (R. 45).

A vocational expert, Dr. Mary Kessler, testified concerning the type and availability of jobs that the claimant was able to perform. The ALJ asked Dr. Kessler to assume a person of the claimant's age, education, and work experience and skill with the following limitations: can perform light work; can't climb ladders, ropes, or scaffolds; must avoid any exposure to the operation of hazardous moving machinery and unprotected heights; can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; and can perform work that requires no more than the understanding, remembering, and pairing of simple, but not detailed or complex, instructions.

Dr. Kessler testified that, under those assumptions, an individual could work as a general office clerk, with approximately 2,800 jobs in Alabama and more than 359,000 nationally; a cleaner at light, unskilled level, with approximately 7,200 jobs in the state and more than 548,000 nationally; and a packer or packager, with approximately 5,500 jobs in Alabama and more than 483,500 nationally. (R. 57-58). Dr. Kessler also testified that these jobs are all unskilled occupations. Dr. Kessler further testified that if the exertional level was sedentary, jobs are still available as an inspector or sorter, with approximately 950 jobs available in Alabama and approximately 13,000 nationally; a surveillance system monitor, with 800 jobs in Alabama and 21,000 nationally; and a general office clerk with approximately 1,200 jobs in the state, and 103,400 nationally. (R. 58).

Dr. Kessler testified that if an individual was off task more than fifty percent of the work day at the unskilled type of jobs, termination may be likely. She stated that an employer would not tolerate an employee being away from a workstation for long periods of time, other than for the customary breaks. (R. 59).

*The ALJ"s Decision*

On March 27, 2013, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act. (R. 14). After a careful review of the record, the ALJ determined the claimant met the insured status requirements of the Social Security Act through September 30, 2011. (R. 16). The ALJ also found the claimant had not engaged in substantial gainful activity since August 15, 2010, the alleged onset date. (R. 16).

The ALJ then found that the claimant suffered from the severe impairments of obesity; osteoarthritis of the right knee; status post arthroscopic repair of the left knee with osteoarthritis; status post left tibia/fibula fracture; status post right femur fracture; depression; attention deficit hyperactivity disorder (ADHD); anxiety; and post-traumatic stress disorder (PTSD). (R. 16). In addition, the ALJ concluded that the claimant's alcohol abuse constitutes, at most, only a slight abnormality that cannot reasonably be expected to produce more than minimal, if any, work related limitations and is non-severe. (R. 17).

The ALJ concluded that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 17). The ALJ found that the claimant's impairment of obesity did not meet the required levels of severity for a listed impairment. He further concluded that the claimant's file did not contain evidence indicating that her other impairments alone caused her to be unable to work; nor did it show that in conjunction with her other impairments that it disabled her. Thus, the ALJ concluded obesity is not, by itself, or in conjunction with her other impairments, so severe as to prevent her from working. (R. 17).

The ALJ determined that the claimant's bilateral osteoarthritis of the knees did not meet

the requirements of either listing because it does not result in the inability to ambulate effectively. The ALJ noted that the evidence failed to show repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs and one of the following at the marked level: (1) limitation of activities of daily living, (2) limitation in maintaining social functioning, or (3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. The ALJ concluded the claimant's status post right femur fracture and status post left tibia/fibula fracture did not meet the requirements of the listing because they do not result in the inability to ambulate effectively. Additionally, the ALJ noted that the medical images show that the unions are clinically solid. (R. 17).

Next, the ALJ found that the severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria for an impairment. In making this finding, the ALJ concluded the claimant has moderate restriction in activities of daily living. (R. 17-18). When the claimant initially reported her activities of daily living, the only problem reported was the increased difficulty of getting up and down on/off the toilet. She reported that she spends her days cleaning and performing household chores, including laundry, sweeping, mopping and vacuuming. (R. 20). The ALJ concluded that, while the claimant may have some problems performing daily activities secondary to symptoms associated to her mental health impairments, her problems are no more than moderate in nature. (R. 18).

The ALJ further found that the claimant has mild difficulties in social functioning. The ALJ noted that the claimant repeatedly reported that she enjoys playing on the computer, watching television, playing cards, shooting pool, and spending time with family and friends; that the claimant reported to Dr. Nichols that she enjoyed swimming; and that the claimant also

reported to Dr. Nichols that she attends church on a regular basis. The claimant also testified that she recently moved in with her boyfriend, whom she met online, and also volunteers with a substance abuse recovery program. The ALJ concluded that because of her wide social network, she does not appear to have problems socializing with others; therefore, any limitations she may experience with respect to her social functioning are, at most, mild. (R. 18).

Furthermore, the ALJ noted that the claimant merely has moderate difficulties regarding concentration, persistence, or pace. The claimant reported that her ability to concentrate was affected by her ADHD. She also reported problems with her short-term memory; however, she did not report any problems with her ability to complete tasks or understand or follow instructions. She also stated that she follows spoken instructions "very well." The ALJ noted that during her psychological examination, Robert Estock, M.D. stated that the claimant's recent and remote memory functions were grossly intact and that she could recall two out of three items after a short delay. (R. 18). The ALJ found that while the claimant may have some difficulties with her concentration, persistence, or pace secondary to her mental impairments (particularly her ADHD), those difficulties are no more than moderate in nature. (R. 19).

The ALJ found that the claimant has the residual functional capacity to perform light work with the following limitations: cannot climb ladders, ropes, scaffolds; must avoid unprotected heights; can never operate hazardous, moving machinery; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can occasionally operate foot controls bilaterally; is limited to work that requires no more than the understanding, remembering, and carrying out of simple, but not detailed or complex, instructions; and must have no more than occasional changes in the work setting. (R. 19).

After careful consideration of the evidence, including testimony, medical evidence, and opinion evidence, the ALJ found that the claimant's medically determinable impairments could reasonably expect to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (R. 20).

In reaching this conclusion, the ALJ noted that despite the claimant's complaints of her inability to work and the persistence of pain and disability, the medical records show otherwise. Noting the claimant's left knee surgery in 2002, the ALJ stated that the record indicated that the claimant was "getting around real good" and that, while she had a ten percent deficit in range of movement, she had good motion and strength. (R. 21).

The ALJ gave Dr. Nichols's opinion partial weight, because of the inconsistencies and lack of specifics in her report. While Dr. Nichols opines that the claimant has deficits and compromised abilities, the ALJ noted she did not state what those specific deficits of compromised abilities were. The ALJ noted that Dr. Nichol's opinion that the claimant might be expected to miss one or two days of work per month due to exacerbation of psychiatric symptoms was not supported by the great weight of evidence that shows the claimant has broad activities of daily living and several interpersonal relationships. (R. 24).

The ALJ also noted he gave the opinion of Dr. Duryea, the claimant's treating physician, little weight. The ALJ determined that Dr. Duryea's limited treatment records, that largely show normal physical examinations and treatment of the claimant's mental impairments through the prescription of medication only, did not support her opinion. The ALJ also noted that Dr. Duryea, a primary care physician, offered an opinion on the claimant's mental impairments,

which was outside of her medical speciality, thus the opinions of Dr. Nichols and Dr. Estock were entitled to more weight. Moreover, the ALJ noted that Dr. Duryea previously employed the claimant. The ALJ determined that given her personal relationship with the claimant, her opinion was not that of an unbiased treating source that would normally be entitled to more weight. (R. 24).

The ALJ determined that the claimant's reported activities are very broad and are inconsistent with her allegation that she has disabling pain and mental limitations that affect her ability to function physically and mentally on a daily basis. The ALJ noted that the medical evidence showed that the claimant had good recovery well after her knee surgeries, despite the claimant's failure to comply with instructions not to bear weight on her leg. Furthermore, the ALJ noted physical examinations of the claimant, including the examination by Dr. Tenchavez, showed a normal gait without the use or need of an assistive device and good neuromuscular findings. The ALJ noted that, given the claimant's surgical history, obesity, normal physical examinations, and her own report of broad activities of daily living, limiting her work at a light level of exertion, with some limitations, is reasonable. (R. 23).

Based on testimony of the vocational expert, considering the claimant's age, education, work experience, and residual functional capacity, the ALJ determined that the claimant could make a successful adjustment to other work that exists in significant numbers in the national economy such as: a packager, general office clerk, cleaner, inspector, and a surveillance system monitor. Under these reasons, the ALJ concluded that the claimant was not disabled as defined in the Social Security Act. (R. 26).

## VI. DISCUSSION

The claimant contends that the ALJ erred in three ways: (1) by failing to accord proper weight to the opinion of Dr. Duryea, claimant's treating physician.  (2) by according improper weight to the opinion of Dr. June Nichols, the consultative psychologist for the Commission; and 3) by failing to re-contact Dr. Nichol's to receive additional information to clarify her opinion.

### A. The ALJ Properly Weighed the Treating Physician's Opinion:

The claimant argues that the ALJ failed to accord proper weight to the opinion of the claimant's treating physician, Dr. Duryea. This court finds the ALJ properly articulated his reasons for giving little weight to the opinion of Dr. Duryea and that substantial evidence supports these reasons.

The ALJ must accord substantial or considerable weight to the opinions of treating physicians, unless good cause is shown. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The ALJ may discount a treating physician's report when the report is not accompanied by objective medical evidence. *Crawford,* 363 F.3d at 1159. An ALJ may also discount the opinion of a treating physician when the physician's opinion is "not bolstered by the evidence." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (2004). If the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight and substantial evidence supports those reasons, the ALJ does not commit reversible error. *Moore,* 405 F.3d at 1212.

The ALJ explicitly stated that he gave Dr. Duryea's opinion "little weight."  The ALJ gave three reasons for this determination.  First, the ALJ stated Dr. Duryea's limited treatment records that largely show normal physical examinations and treatment of the claimant's mental impairments through the prescription of medication only, did not support her opinion. The ALJ

articulated that Dr. Duryea's opinions expressed on checkbox forms were not entitled to any special weight, because they failed to provide any narrative discussions or clinical findings to support her conclusions. Moreover, the ALJ explained that Dr. Duryea's notes showed that the prescribed medications for the claimant's mood were effective when taken as prescribed. Second, the ALJ noted that, as to the claimant's mental health, Dr. Duryea, as a primary care physician, was offering a medical opinion outside of her medical speciality, thus the opinion of Dr. Nichols was entitled to more weight. Lastly, the ALJ noted Dr. Duryea employed the claimant prior to the claimant returning to Alabama. The ALJ noted that given her personal relationship with the claimant, her opinion was not that of an unbiased treating source that would normally be entitled to more weight.

Based on the ALJ's explicit statements of his reasons grounded in the record for giving little weight to Dr. Duryea's medical opinion, this court concludes that the ALJ correctly applied the legal standard and that substantial evidence supports his decision.

**B. The ALJ Properly Weighed Consultative Psychologist's Opinion:**

The claimant argues that the ALJ did not give proper weight to the medical opinion of Dr. June Nichols, the consultative psychologist for the Commissioner. The claimant contends that the ALJ failed to state specific reasons for giving her opinion only "partial weight." To the contrary, this court finds that the ALJ properly articulated his reasons and substantial evidence supports the weight the ALJ gave to the medical opinions.

The ALJ may reject the opinion of *any* physician when the evidence supports a contrary conclusion. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (emphasis added). Under this standard, the ALJ does not have to accord an opinion arising out of a single consultative

17

examination the special deference he must give to a treating physician's opinion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).

The ALJ explicitly stated he gave "partial weight" to Dr. Nichols's opinion because she noted that the claimant had deficits and compromised abilities, but did not specifically state what those specific deficits of compromised abilities are. The ALJ also noted that medical evidence did not support Dr. Nichol's opinion that the claimant might be expected to miss one or two days of work per month caused by exacerbation of psychiatric symptoms, because the great weight of the evidence showed that the claimant has broad activities of daily living and several interpersonal relationships. (R. 23-24). An ALJ may give less weight to a medical opinion that is not supported by medical evidence. 20 C.F.R. § 416.927.

Based on the ALJ's explicit statement of his reasons grounded in the record for giving less weight to Dr. Nichols's opinion, this court concludes that the ALJ correctly applied the legal standard and the substantial evidence supports his decision.

**C. The ALJ Did Not Have a Duty to Re-contact Dr. Nichols:**

Finally, the claimant argues that the ALJ should have contacted Dr. Nichols for clarification of her opinion before formulating his final decision. The ALJ was not obligated to re-contact the claimant's consultative physician, and substantial evidence supported the ALJ's findings.

The ALJ found that the evidence in the record was sufficient to enable him to make a determination about the claimant's abilities to perform work. The ALJ largely based his findings on the medical records showing good recovery and normal physical examinations; the claimant's testimony of very broad activities of daily living; and the physicians' opinions he found to be

credible and consistent with medical records.  The ALJ found that the objective medical evidence suggested greater sustained capacity than described by the claimant, Dr. Duryea, and Dr. Nichols. The ALJ was not obligated to re-contact Dr. Nichols to seek any further medical consultation because substantial evidence in the record supported the ALJ's determination.

The Social Security regulations provide that the ALJ "*may* [not must] re-contact your treating physician, psychologist, or other medical source" to resolve inconsistencies or insufficiencies in the record. 20 C.F.R. § 404.1520b(c)(1) (emphasis added).  As such, the ALJ did not err in using his discretion to not re-contact Dr. Nichols.

## VII. CONCLUSION

For the reasons stated above, this court concludes that substantial evidence supports the Commissioner's decision. Accordingly, this court AFFIRMS the decision of the Commissioner. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 26th day of August, 2015.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE